UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Hon. Mae A. D'Agostino |
| | U.S. District Court Judge |
| HEATH L. POWERS, | Docket No. 14-CR-337 (MAD) |
| Defendant | |

**SENTENCING MEMORANDUM AND
MOTION FOR A NON-GUIDELINES SENTENCE**

*1. Procedural History*

Heath Powers comes before this court for sentencing following his plea of guilty to thirteen counts of a thirteen count indictment charging him with a violations of 18 U.S.C. § 2251(a) and (e) (Counts 1-11), 2252(a)(1)(A), (b)(1) (Count 12) and 2252(a)(5)(B), (b)(2) and 2256(8) (A), production, distribution and possession of child pornography. Mr. Powers pleaded guilty on June 2, 2015. Mr. Powers admitted his guilt from the very start of the investigation and he has fully cooperated with the investigators and the probation department. He has tried to gain insight into his criminal behavior. This will be Mr. Powers' first criminal conviction and sentence.

*2. Guideline Objections*

The court must accurately calculate the guideline range before turning to the 18 U.S.C. 3553(a) factors and the decision on whether a variance from those guidelines is proper.

1

Heath Powers Pre-Sentence Report calculates an adjusted guideline range of 43[1] in criminal history category I, with a corresponding term of imprisonment of life.

Even if the court finds that the guidelines are scored correctly, the calculated offense level and the corresponding applicable sentence of life would result in an unreasonable term of incarceration, inconsistent with what §3553 requires.

Mr. Powers has no guideline calculation objections. He does have some minor factual objections to the report.

Paragraph 90: Douglas Powers' home flooded and he was forced to move in with Heath.

Paragraph 99: Powers denies ever striking any children, intentionally or accidently. He left the employment because he felt the children were uncontrollable and he had better opportunities for work elsewhere.

Paragraph 101: Heath's certification expired so he was unable to continue with the employment at the college. When he became recertified, he never sought employment back at the college.

Paragraph 103: Mr. Powers reports that he was never terminated from his employment at the Comfort Inn. He possessed the vending money because he took it so it did not burn in the fire at the hotel. He admitted to using some of the cash while it was in his possession but when the money was returned, it was returned in its entirety.

Paragraph 105: Powers denies these allegations of a former student. He always had other teaching assistants present and never performed lifts on any of the students.

Paragraph 107: Mr. Powers does not have an Old Navy Card. He believes the card may be his sister's, who has a similar name.

---

[1] Actual total offense level, after acceptance, is calculated at 50, but because the guidelines only go up to 43, the level is reduced to 43. U.S.S.G. §5A.

3.  **_Sufficient but Not Greater than Necessary Sentence to comply with the specific purposes of sentencing set forth in 18 U.S.C. 3553(a)(2)_**

The Court is in the difficult position of fashioning a sentence that complies with the purposes of sentencing set forth in 3553(a) without imposing a sentence greater than necessary. The Court is instructed to insure the sentence imposed reflects the seriousness of the offense; promotes respect for the law; provides just punishment for the offense; affords adequate deterrence to criminal conduct; protects the public from further crimes of the defendant; and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553 (a)(2)

In applying 18 U.S.C. 3553(a) and its parsimony clause the Court must look to the nature and circumstances of the offense, the history and characteristics of the offender, the need to avoid unwarranted disparity and the guidelines themselves. The remainder of this memorandum will address these issues with a focus on why, in conjunction with the parsimony clause, a sentence of 15 years with a lengthy term of supervision complies with the dictates of 3553(a).

    A.    *Nature and Circumstances of the Offense*

Mr. Powers admitted to all counts of a thirteen count indictment. Count one through eleven charge the production of child pornography. Mr. Powers committed the production of child pornography by using the picture taking capabilities of his iPhone 4 to take images of the victim while she was sleeping. The images are indefensible and portray the egregious victimization of the victim. Mr. Powers took advantage of the situation he was in to take the photos of the victim.

As Count 12 charges, he then distributed those images to a confidential source. Count thirteen charges their possession and the possession of other videos and stories acquired via the

internet.

Mr. Powers looks back on what he did with extreme remorse and regret. He cannot justify his conduct. He believes that his consumption of pornography, sexual stories and ultimately child pornography, led him into a mental and physical state where he was able to produce the photos on his phone. In hindsight, even as early as his arrest, he cannot and could not believe what he has done.

Mr. Powers was arrested and brought to the Plattsburgh police station. Once the initial shock of his arrest was over, he did not object to the search of his phone, computer, or thumb drive. He answered all of the questions posed to him by law enforcement. His statement was a complete confession. PSR ¶13  He provided all the information he had about with whom the pictures were shared. He pleaded guilty to all counts despite knowing he faced up to a life sentence as a result of his conduct. He has accepted full responsibility for his actions. His conduct after arrest makes clear he is very open to treatment.

    B.    *Mr. Powers' personal history and characteristics support the minimum sentence allowed by law at the present time, a fifteen year sentence.*

        1.    *Family History*

Heath Powers is 34 years old. He grew up in Plattsburgh, New York. He completed High school in Peru, New York and earned approximately 65 college credits at Clinton Community College and SUNY Plattsburgh. He has never been married and has no children.

Mr. Powers has one brother, age 26, and one sister, age 38. Both of his siblings live in and around the Plattsburgh area.  His mother passed away in 1986 from heart surgery complications. She was thirty-three, Mr. Powers was approximately five (5). His father,

4

Douglas, is sixty years old. Douglas eventually remarried (six years later). He divorced in 2005. Heath's relationship with his step-mother was strained due to her alleged alcohol abuse, which led to verbal and physical abuse within the family.

> 2. *Physical and Mental Condition and Testing.*

Heath has no significant medical conditions. He has a partially herniated lower lumbar disc in his back. He does not take any medications. He reported a history of mild depression triggered by life situations including, loss of a job, breakup with a girlfriend or the loss of a pet. He has no major depression, no history of suicidal ideation or attempts. Heath underwent voluntary counseling at Behavioral Services North in Plattsburgh to address his depression. He was diagnosed with adjustment disorder, mild anxiety and depressed mood.

Heath has an extensive history of on-line adult pornography viewing. This began several years prior to his arrest. He asserts an interest in adult females. He indicated he became attracted to minor females after being exposed to child pornography on the internet. He has no sexual attraction to males.

Testing completed by Dr. Jacqueline Bashkoff, Ph.D. was administered prior to sentencing. Included in the testing was the admission of the Hanson Sex Attitudes Questionnaires; the Wilson Sex Fantasy Questionnaire; the Bumby Cognitive Distortion Scales; and the Abel & Becker Cognition Scale.

The Hanson Sex Attitudes Questionnaires is a test developed to assess attitudes associated with child molestation. The test has two subscales including the Sexual Entitlement Scale and the Sexy Children Scale. Part one assesses the individual's sense of entitlement to have his sexual urges fulfilled. Part two assesses the perception of children as sexually attractive and sexually motivated. Mr. Powers scored an 11 on the Sexual Entitlement Scale. This score

demonstrates he has no cognitive distortions or misbeliefs about his entitlement to have his sexual urges fulfilled.  His score of 12 on part two is also in the normal range.  It reflects his accurate perception of children not being sexually motivated or sexually attractive.

The Wilson Sex Fantasy Questionnaire is made up of 40 sexual behaviors.  The individual is asked to indicate the frequency at which they have sexual thoughts or fantasies to 40 different types of sexual behaviors.  Mr. Powers' fantasies all fell within categories reflective of loving, intimate, and consensual relationships.  There was no indication of inappropriate, violent, forceful, or coercive sexual activity.

The Bumby Cognitive Distortion Scales is a two part test that includes the Rape and Child Molestation Scale.  Mr. Powers' score of 43 on the rape scale is in the low range and reflects he does not experience confusion or poor reality testing about what constitutes rape.  His score of 44 on the Child Molestation Scale is in the normal range.  The score represents a full understanding of what sexual behaviors are appropriate and those that are not.

Finally, the Abel & Becker Cognition Scale assesses the individual's perception of sexual activity with underage children in a variety of situations.  Mr. Powers' responses suggest he has no wrongly held beliefs, misbeliefs, or cognitive distortions about sexual activity with underage individuals.

Based on the testing; an interview with Heath Powers; and collateral contact with his brother and father, Dr. Bashkoff finds Mr. Powers a moderate risk to reoffend at present.  However, taking into account a prison sentence, his motivation for treatment, and his lack of any prior criminal history or any substance abuse issues, his risk to reoffend will be reduced.  (Exhibit A -- Bashkoff Report, pp.4-6, citing Abracen, Looman, Ferguson, Parkins and Mailloux, 2011)

       3.     *Employment History*

Heath has a strong work history. After graduating from High School in Peru, New York, He began working and attending classes. He has accumulated approximately 65 credits from Clinton County Community College and SUNY Plattsburgh. He has worked in his community since graduating High School. He has been an independent Red Cross instructor, teaching CPR, lifeguard certification, first aid, sports injury treatment, and babysitting courses. He briefly worked in an after school daycare program with the YMCA in Cumberland Elementary School. The circumstances of his departure are incorrectly reported in ¶76 of the PSR. Mr. Powers left the employment because he felt he was ill suited to deal with the misbehaving children. According to Mr. Powers, the last straw was when one child struck another child in the face. Mr. Powers was dissatisfied by the behavior and felt that his inability to deal with the children was a good reason to resign his position. It was a job he was doing as a favor to a friend who was running the program and was only part time work. Mr. Powers indicated it was not worth the aggravation involved on a daily basis.

Heath also worked for the Arts Center in Plattsburgh. Eventually he began his own theater program. His program ran much like other arts programs in the area. He always had teaching assistants present and was never alone with the children. He also taught classes for Clinton County Community College. Many were sponsored by the Red Cross.

Mr. Powers held long term employment with the Comfort Inn in Plattsburgh, New York. He moved up the ranks at the hotel. Ultimately, he was working as the hotel entertainment manager, working with all of the hotel guests (not just children as ¶80 infers).

Despite attempts by the investigation to turn every employment Mr. Powers held into one

in which he was looking to abuse children, no reports of abuse, inappropriate touching, or otherwise endangering the welfare of children were made throughout the time Mr. Powers held his employment. Allegations lodged by one student ¶82 (inappropriate touching during a lift in a play rehearsal), after Mr. Powers was arrested and charged in this case should be given little weight compared to the thousands of students Mr. Powers interacted with during his community service, teaching and theater work who report no such touching or negative interaction. Mr. Powers denies any such allegation. Appropriately, the case agent spoke to many of Mr. Powers students, other than the one alleged inappropriate touching, no other contact allegations were lodged against Heath during any of his employment positions. He was appropriately and genuinely interested in his community for the right reasons. He has accepted responsibility for his conduct, but denies that his employment and community involvement were taken on for improper or illegal reasons.

    4.  *Letters of Support*

 To date, Heath has received letters of support from his former teaching assistant, her mother, a family friend, and his father. The letters are attached under separate cover. The writer of each offers their own insight into Heath's character and his past. All express shock that the Heath they knew could do such a horrible crime. Each letter requests leniency.

    5.  *Traits That Support a Lower Rate of Recidivism in Heath's Case*

 Heath Powers has a number of traits that suggest he presents a lower level of recidivism than others that appear before the court. He has no criminal history and no substance abuse problems. These are two major factors in reducing his recidivism rate. As reported above, if given appropriate treatment and supervision, his risk to reoffend will be reduced (Abracen, Looman, Ferguson, Parkins and Mailloux 2011. In a meta-analysis of 23 studies, Hanson et al.

(2009) found that sex offenders who participated in treatment, either prison- or community-based, had a sexual recidivism rate that was 43% lower than untreated offenders (10.9% vs. 19.2%) and a general recidivism rate that was 34% lower (31.8% vs. 48.3%). See, Hanson, R. H., Bourgon, G., Helmus, L., & Hodgson, S. (2009). The principles of effective correctional treatment also apply to sexual offenders: A meta-analysis. *Criminal Justice and Behavior, 36(9)*, 865-891

      Mr. Powers faces a prison term of at least 15 years. During that period of time Mr. Powers will be eligible for residential or non-residential treatment. Placement in one program or the other will rest on the needs of the offender. If the BOP determines an elevated risk of recidivism is present, Mr. Powers will be in the Residential treatment program. Residential treatment involves high intensity programming for a period of 12 to 18 months. The Bureau provides this program at USP Marion in Illinois and at FMC Devens in Massachusetts. Participants benefit from a therapeutic community on a residential housing unit where they work to reduce their risk of future offending. Offenders receive treatment five days per week. This treatment targets offenders with an elevated risk of reoffending. https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp. Following this treatment the Bureau of Prisons will assess whether Mr. Powers is fit to return to society. 18 U.S.C. § 4248 now provides means to indefinitely commit sexually dangerous offenders. The Bureau of Prison, over the course of an offender's confinement and treatment, is able to identify and refer dangerous individuals for commitment. This system will be able to assess the dangerousness Mr. Powers presents fifteen years from now, after significant incarceration and treatment.

      In addition to treatment, Mr. Powers will also age significantly while in custody. He will be almost 50 years old if he receives a 15 year sentence. He will be on supervision, most likely

for the remainder of his life. He will be on the sex offender registry for the remainder of his life. In 15 years Mr. Powers will be a good candidate for supervision and release from custody. Although labeled the mandatory minimum sentence, 15 years is a lengthy prison sentence, sufficient to punish Mr. Powers, protect the public, and deter Mr. Powers and others from future criminal conduct.

### 4. Conclusion

A sufficient sentence in this case, based on all the 3553(a) factors is a sentence of fifteen years, with a significant term of supervision to follow. In fifteen years Mr. Powers will present a lower risk to the community and will be almost 50 years old. He will have been the beneficiary of the best treatment and counseling the Bureau of Prisons can offer. He will go into that treatment highly motivated with the goal of once again be a productive member of society.

Date: October 30, 2015					LISA PEEBLES
								Federal Public Defender


					By:	/s/ Paul Evangelista
						Paul Evangelista
						Bar # 507507
						Assistant Federal Public Defender
						39 North Pearl Street
						Albany, New York 12207
						Tel: (518) 436-1850
						Paul.evangelista@fd.org

To:	United States District Court Clerk
	Katherine Kopita, Esq., AUSA
	Angela Bennett Rodriguez, USPO

CERTIFICATE OF SERVICE

      I, Paul Evangelista, Esq., attorney of record for the above-named defendant, hereby certify that on October 23, 2015, I filed the foregoing Sentencing Memorandum and Motion for a Non-Guidelines Sentence, with the Clerk of the District Court.   By filing a copy was delivered to Katherine Kopita, Esq. Assistant U.S. Attorney and Angela Bennett Rodriguez, USPO.

DATED:        October 30, 2015                    LISA PEEBLES
                                                   Federal Public Defender


                                        *By:*    *Paul Evangelista*
                                                 Paul Evangelista, Esq.
                                                 Assistant Public Defender
                                                 Bar No.: 507507
                                                 39 North Pearl St., 5th Floor
                                                 Albany, NY 12207
                                                 Tel: (518)436-1850
                                                 Paul.evangelista@fd.org