**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Hon. Mae A. D'Agostino** |
| ) | **U.S. District Court Judge** |
| **HEATH L. POWERS,** ) | **Docket No. 14-CR-337 (MAD)** |
| ) | |
| **Defendant** ) | |
| ) | |

**SENTENCING MEMORANDUM AND**
**MOTION FOR A NON-GUIDELINES SENTENCE**

*1.*    ***Procedural History***

Heath Powers comes before this court for sentencing following the remand of his case by the Second Circuit Court of Appeals with instruction to vacate the erroneous count of conviction (Count 5), and for *de novo* resentencing.

*2.*    ***Guideline Objections***

The court must accurately calculate the guideline range before turning to the 18 U.S.C. 3553(a) factors and the decision on whether a variance from those guidelines is proper.

Heath Powers' Pre-Sentence Report calculates an adjusted guideline range of 43[1] in criminal history category I, with a corresponding term of imprisonment of life.

Even if the court finds that the guidelines are scored correctly, the calculated offense

---

[1] Actual total offense level, after acceptance, is calculated at 50, but because the guidelines only go up to 43, the level is reduced to 43. U.S.S.G. §5A.

level and the corresponding applicable sentence of life would result in an unreasonable term of incarceration, inconsistent with what §3553 requires.

A.    *Nature and Circumstances of the Offense*

Mr. Powers admitted to all counts of a thirteen-count indictment. Count one through eleven charge the production of child pornography. Mr. Powers committed the production of child pornography by using the picture taking capabilities of his iPhone 4 to take images of the victim while she was sleeping. The images are indefensible and portray the egregious victimization of the victim. Mr. Powers took advantage of the situation he was in to take the photos of the victim.

As Count 12 charges, he then distributed those images to a confidential source. Count thirteen charges their possession and the possession of other videos and stories acquired via the internet.

The nature and circumstances of the offense have not changed since the original sentencing. No other victims have come forward and the defense is unaware of any changes in the mental well-being of the victim in the case.

B.    *Mr. Powers' personal history and characteristics support a significant reduction in the 40-year sentence originally imposed.*

1.    *Mr. Powers has actively participated in treatment while in the BOP.*

Mr. Powers sought out and engaged in opportunities to identify and address the reasons for his offense as soon as he arrived at USP Tucson. One of Powers' paramount accomplishments since his incarceration is the completion of the Challenge Program. Challenge is described as a residential modified therapeutic community program where inmates engage in

2

half day programming for a minimum of 500 hours, over an average of 12-16 months.  Mr. Powers successfully completed the program in December 2017.  After completion, he continued to reside in the community "where his contributions were observed as commendable."  He has played an important role as a graduate of the program and has consistently demonstrated effective listening, processing and communication skills.  "Mr. Powers has demonstrated praiseworthy contributions to the therapeutic community at large for over 2 years.  This is a tremendous accomplishment for not only him, but his family, peers and the therapeutic community for which he represents".  *BOP Psychology Services General Administrative Note, 03/07/2019* (attached as Exhibit B).

Records reveal Mr. Powers participated in 252 treatment sessions under the Sex Offender Management Program. He was never absent form treatment without a valid excuse and his participation was overwhelmingly reported as good. *BOP Psychology Services Notes, pp. 5, 6, 9, 10, 18, 27, 30, 34, 35, 36, 37, 38, 40, 45, 52 53, 55, and 60*,  Exhibit A.  He struggled with some of the concepts in the treatment program, including deflecting some of the responsibility for his conduct.  He continued to work through concepts of rationalization.

2.    *Physical and Mental Condition and Testing.*

In September 2018, Mr. Powers participated in a Sex Offender Treatment Program Psychosexual Evaluation.  Part of the examination included the administration of the Static 99R, a brief actuarial instrument designed to estimate the probability of recidivism among male sex offenders.  It was used to estimate Mr. Powers' risk of re-offense.  On this measure, he obtained a score of zero.  This suggests he is in the below average range of risk for sexual recidivism. (BOP Psychosexual Examination, 9/20/2018, p. 6 of 8, Exhibit C).  He also demonstrated a

number of protective factors.  Factors which may lower his risk of recidivism include actively participating in sex offender treatment; cooperative attitude toward treatment and supervision staff; and sexual arousal to age-appropriate partners. (BOP Psychosexual Examination, 9/20/2018, p. 6 of 8).  The same report identifies Mr. Powers' treatment needs. (Id. at 7 of 8)  As he goes through treatment, these needs will be addressed.  On a whole, Mr. Powers is very motivated in his treatment programs.  His good attitude and consistent attendance will help him accomplish his treatment goals.  In September of 2018, Dr. Werner completed her psychosexual evaluation of Powers.  She opined that "overall, Mr. Powers appeared to present a Low risk for re-offense, and his treatment needs are being appropriately addressed in the non-residential sex offender treatment program." Id. at p. 8 of 8.

3.    *Education History*

While incarcerated Mr. Powers has successfully completed approximately 1345 hours of educational programming.  Topics have ranged from Asian Studies to Yoga, over 120 courses in all.  The transcript of his coursework is attached as Exhibit D.  These are all in addition to the SOMP-NR programming that Mr. Powers has been participating in while in custody.  Mr. Powers has earned community college credits while in custody.  He has made extraordinary efforts to better himself on all levels while incarcerated.

3.    **Sufficient but Not Greater than Necessary Sentence to comply with the specific purposes of sentencing set forth in 18 U.S.C. 3553(a)(2)**

The Court is in the difficult position of fashioning a sentence that complies with the purposes of sentencing set forth in 3553(a) without imposing a sentence greater than necessary.  The Court is instructed to insure the sentence imposed reflects the seriousness of the

offense; promotes respect for the law; provides just punishment for the offense; affords adequate deterrence to criminal conduct; protects the public from further crimes of the defendant; and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. §3553 (a)(2)

Since Mr. Powers' original sentence in 2015, the Second Circuit has issued a number of opinions remanding child pornography cases for reconsideration of sentences deemed substantially unreasonable.  The Court has consistently recognized that even when scored accurately, the sentencing guidelines in this area of cases can result in extreme, barbaric sentences, unless great care is used in their application.  United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010).  In many of the cases that follow a defendant received a lower sentence despite what appears to be more egregious conduct than perpetrated by this defendant.

In United States v. Sawyer, 907 F.3d 121 (2d Cir. 2018), where Sawyer was convicted of production, possession and distribution of child pornography and originally sentenced to 30 years of imprisonment, the Second Circuit affirmed Sawyer's reduced 25 year sentence. In the original Sawyer opinion, the Circuit held that the "30-year sentence would have been appropriate for 'extreme and heinous criminal behavior' and the conduct in this case did not rise to such a level" because although Sawyer had "violated both children by exposing them to the camera and touching them in the process, there was no evidence . . . that he engaged in penetrative sexual assault in any form."  The court reasoned that the average sentence for cases like Sawyer's is about 22 years and although Sawyer's resentence to 25 year sentence was "barbaric," it was not unusual. This average is based on data reported in the 2012 Report to the Congress: Federal Child Pornography Offenses. Like Sawyer, Powers did not engage in sexual

intercourse with the victim and so a sentence of 40 years for Powers is very excessive given the average sentence of 22 years and Sawyers "barbaric" sentence of 30 years.

Further, in Sawyer, the court noted that a reduction from 30 years to 25 years represented a reduction of 1/6th of the sentence and that was "undoubtedly substantial." Sawyer, 907 F.3d at 125 . A similar reduction for Mr. Powers, 1/6th of the 40-year sentence, would equate to a sentence of approximately 33 years.   This represents a sentence still eleven (11) years greater than the average suggested in Sawyer.   Although Mr. Powers does not have a childhood history of abuse, like Sawyer, a reduced sentence would reflect his lack of criminal history prior to this case.  He also presents a reduced risk of danger to the community given that he has already been actively participating in sex offender rehabilitation and treatment programs in prison.  Overall, following circuit precedent, his conduct does not reflect that of an individual who was seeking and participating in sexual intercourse with minors, such that a 30 or 40-year sentence may be justified.

The creator of the Vicky series, perhaps the most widely distributed child pornography series in the world, was the victim's father.  Vicky's father subjected her to repeated incestuous rape, while bound and using other forms of torture.  The abuse was reoccurring and continued  over an extended period (5 years). When Vicky finally revealed the abuse, overcoming the psychological control her father had exerted over her, he fled U.S. jurisdiction and became a fugitive from Justice eventually arrested in Hong Kong.  He received a sentence of 50 years imprisonment. *The Spokesman-Review*, Wednesday, March 25, 2009, Spokane, Washington.

In a summary order issued on July 11, 2017 in United States v. Burghardt, No.

16-949(L) (Katzmann, Pooler, Lynch), the Second Circuit remanded a 322-month (26.8 years) Guidelines sentence for distribution and receipt of child pornography for "further consideration" by the district court.  Although the Court found the sentence to be procedurally reasonable and not  substantively unreasonable, the court remanded nonetheless for further consideration.  The Court was motivated by a concern that the "cumulative effect of overlapping enhancements" might render Burghardt's sentence excessive.  The Court remanded to "give the district court an opportunity to consider whether the cumulative effect of those enhancements, in relation to the . . . base offense level, should result in a non-Guidelines sentence."  The Court sharply criticized the "seriously flawed" Guidelines enhancements for child pornography offenses, noting that "unless applied with great care" they may lead to unreasonable sentences inconsistent with the purposes of sentencing set forth in 18 U.S.C.  § 3553(a).  *See also*, United States v. Jenkins, 854 F.3d 181, 188 (2d Cir. 2017).

The cautionary instructions from United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010), are consistently noted by the Second Circuit, particularly by Judge Pooler in both concurring and dissenting opinions, when the guideline sentence is extremely long especially for defendants with no prior criminal history.  (see above).  In *Dorvee,* the Court recognized that U.S.S.G. § 2G2.2 is "fundamentally different" from most other guidelines and must be applied with "great care" because it is not based on the Sentencing Commission's expertise (but rather Congress's direction), its four enhancements are effectively triggered for any first-time offender and result in a range near the statutory maximum, and it irrationally recommends a higher sentence than applies to adults who actually engage in sex with minors.

The Court has also distinguished Dorvee in some cases. For example, in United

7

States v. Spoor, 904 F.3d 141 (2d Cir. 2018), the court upheld a 30- year sentence for production

and possession of child pornography as not substantively unreasonable where the defendant's

charges represented a "manifestation of continuing sexual exploitation," including of his own

child.  The record before the District Court included "Spoor's 2013 state conviction, his

confession that he had molested two other seven-year old boys, and the allegations of several

other individuals that Spoor had sexually assaulted them when they were children — a pattern of

abuse that amply supports the District Court's desire to incapacitate Spoor. The District Court's

sentence was calibrated so that Spoor will not be released until he is approximately 80, an age at

which the District Court believed he is unlikely to reoffend."  Spoor, 904 F.3d at 157.  Given the

long history of admitted child abuse by Spoor, the need to prevent future exploitation justified

the sentence.  Yet even Spoor, a repeat, incestual child sex offender received a 30-year sentence.

Ten (10) years less than Power's prior sentence.

    Powers' conduct is distinguished from those of the above defendants in a number of

important respects.  Mr. Powers' production crime occurred over a relatively short period of

time.  Counts one through eleven allege conduct occurring over two distinct days in a 17-day

time frame.  On each day, the defendant took pictures of the victim after he posed her in sexual

positions while she slept.  The images were egregious but they did not portray any penetrative

sexual acts or abuses.  Mr. Powers does not have a history of child abuse, nor have any others

come forward since his incarceration claiming victimization by Powers.  A significant sentence

is justified, but 40 years under the circumstances of this case is greater than necessary.

        In applying 18 U.S.C. 3553(a) and its parsimony clause the Court must look to the

nature and circumstances of the offense, the history and characteristics of the offender, the need

to avoid unwarranted disparity and the guidelines themselves. A sentence significantly less than 40 years with a lengthy term of supervision complies with the dictates of 3553(a).

**4.    <u>Conclusion</u>**

A sufficient sentence in this case, based on all the 3553(a) factors is a sentence of fifteen years, with a significant term of supervision to follow. In fifteen years, Mr. Powers will present a lower risk to the community and will be almost 50 years old. He will have been the beneficiary of the best treatment and counseling the Bureau of Prisons can offer. He has shown he is highly motivated to address his treatment needs. The BOP records show his participation has been good and he has certainly stayed productive while in custody. For these reasons, Mr. Powers' is seeking a significant reduction of the 40-year sentence originally imposed.

Date: July 3, 2019                               LISA PEEBLES
                                                 Federal Public Defender

                                 By:    /s/ Paul Evangelista
                                        Paul Evangelista
                                        Bar # 507507
                                        Assistant Federal Public Defender
                                        39 North Pearl Street
                                        Albany, New York 12207
                                        Tel:  (518) 436-1850
                                        Paul.evangelista@fd.org

To:    United States District Court Clerk
       Katherine Kopita, Esq., AUSA
       Angela Bennett Rodriguez, USPO

CERTIFICATE OF SERVICE

      I, Paul Evangelista, Esq., attorney of record for the above-named defendant, hereby certify that on July 3, 2019, I filed the foregoing Re Sentencing Memorandum and Motion for a Non-Guidelines Sentence, with the Clerk of the District Court.   By filing, a copy was delivered to Katherine Kopita, Esq. Assistant U.S. Attorney and Angela Bennett Rodriguez, USPO.

DATED:      July 3, 2019          LISA PEEBLES
                               Federal Public Defender


                    *By:*   *Paul Evangelista*
                           Paul Evangelista, Esq.
                           Assistant Public Defender
                           Bar No.: 507507
                           39 North Pearl St., 5th Floor
                           Albany, NY 12207
                           Tel: (518)436-1850
                           Paul.evangelista@fd.org